**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IGNACIO BLANCAS, PEDRO MORALES, SALVADOR QUINTANA, ARTURO AVILA, and ARTURO ORTIZ, on behalf of themselves and other similarly situated persons,<br><br>              Plaintiffs,<br>    v.<br><br>CAIRO & SONS ROOFING CO, INC., and MARIO CAIRO<br><br>              Defendants. | Case No. 12 C 2636<br><br>Judge Durkin |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' STIPULATION OF SETTLEMENT AND FOR APPROVAL OF CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Ignacio Blancas, Pedro Morales, Salvador Quintana, Arturo Avila and Arturo Ortiz ("Plaintiffs") on behalf of themselves and all others similarly situated, through their counsel, move this Court for an order preliminarily approving the Parties' Stipulation of Settlement (attached hereto as Attachment 1) (hereinafter, the "Settlement Agreement") and an order approving class certification, the form and manner of class notice, scheduling a Fairness Hearing for final approval of settlement and the form and manner of the claims process. Defendants Cairo & Sons Roofing Co, Inc. ("CSR"), and Mario Cairo (collectively "Defendants") do not oppose this Motion. In further support of this Motion, the Plaintiffs state as follows:

**I.     PROCEDURAL BACKGROUND AND SUMMARY OF THE COMPLAINT**

On April 10, 2012, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois and leave to amended the Complaint was requested on August 14,

2013. The case is currently titled *Ignacio Blancas, Pedro Morales, Salvador Quintana, Arturo Avila, and Arturo Ortiz, on behalf of themselves and other similarly situated persons v. Cairo & Sons Roofing Co. Inc., and Mario Cairo,* Case No. 12 C 2636.

Counts I and II of the Amended Complaint asserts individual violations of the FLSA and IMWL, respectively, based upon Defendants' alleged failure to pay Plaintiffs and Class Members overtime wage for all hours worked in excess of forty (40) hours per week. Count III asserts class-wide violations of the IWPCA for Defendants' alleged failure to pay Plaintiffs and Class Members wages at the rate agreed upon by the parties for all time worked. Defendants deny the allegations of the Complaints.

The Parties now jointly seek to certify a class of persons, for settlement purposes only, that falls within Plaintiffs' IMWL and IWPCA claims.

## II.     STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires district court approval. Fed.R.Civ.P. 23(e); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Isby, et al. v. Bayh, et al.*, 75 F.3d 1191, 1196 (7th Cir. 1996).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing

be given to the class members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc.*, 327 F.3d 938 (9th Cir. 2003).

## III.    CERTIFICATION OF SETTLEMENT CLASS IS APPROPRIATE

As part of the settlement of this matter, the Parties have agreed to seek certification of the following class:

> All individuals who were employed by Defendants between April 10, 2009 and April 10, 2012 in any hourly position but who were allegedly not paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks and/or who were allegedly not compensated for all time worked in individual work weeks.

The complete list of Class Members is attached to the Stipulation of Settlement as Exhibit A.[1]

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In this regard, the Court should not resolve any factual disputes and should not conduct a preliminary inquiry into the merits of the suit. *Eisen v. Carlisle & Jacqelin*, 417 U.S. 156, 177 (1974); *Orlowski v. Dominicks's Finer Foods, Inc.*, 172 F.R.D. 370, 373-74 (N.D. Ill. 1997). Rather, the court should accept as true all well-pleaded allegations of the complaint. *Eisen,* 417 U.S. at 177-78; *Allen v. City of Chicago,* 828 F. Supp. 543, 550 (N.D. Ill. 1993). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen*, 417 U.S. at 178.

---

[1] By agreement of the Parties the identifying information of the Class Members has been redacted from the copy of Exhibit A publicly filed with the Clerk of the Court, but with the Court's approval will be made available to the Court for *in camera* inspection and/or filed with the Clerk under seal.

### A.    Plaintiffs' Class Claims Should be Certified as a Class Action

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted). Second, the action must satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' class claims meet the requirements for class treatment of this Lawsuit.

### 1.    Certification Under Rule 23(a)

### a.    Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). These circumstances include whether it is feasible for class members to bring individual suits and whether it is judicially efficient for the court to try such individual cases. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson*, 415 F.2d

at 1333. "[W]hile there is no number requiring or barring a finding of numerosity, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Toney v. Rosenwood Care Ctr., Inc.*, No. 98 C 0693, 1999 U.S. Dist. LEXIS 4744, at *22 (N.D. Ill. March 31, 1999); See also *Swanson,* 415 F.2d at 1333 n.9 (7th Cir. 1969) (40 class members establish numerosity). In this case, the Parties have established that, including the Named Plaintiffs, there are 83 claimants in the putative class. The size of this putative class easily satisfies Rule 23(a)(1).

### b.        Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify …" *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). In order to satisfy this requirement, there needs to be just one common question of law or fact. *Arenson v. Whitehall Convalescent and Nursing Home*, 164 F.R.D. 659, 663 (N.D. Ill. 1996).

A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Keele,* 149 F.3d at 592 (7th Cir. 1998). Where a movant shows that the successful adjudication of the class representatives' individual claims will establish a right of recovery, or resolve a core issue on behalf of the class members, this prerequisite is met.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Plaintiffs allege that all of Defendants' employees for at least the three years preceding the filing of this lawsuit  were subjected to the same company-wide policies which violated federal and Illinois law, specifically that all of Defendants' hourly employees in Illinois: (1) were not paid for all time spent traveling between work sites; (2) were not paid for all time spent loading and

unloading tool and material onto trucks or other work performed "off the clock"; (3) as a resulted of the Defendants' above referenced failure to pay for all time worked, hourly employees were not paid overtime premiums for all hours worked in excess of forty (40) per week. Defendants dispute these allegations.

Further, differences among the class members regarding damages are not relevant for certification purposes. "The commonality requirement may be met if the common question goes to liability despite individual differences in damages." *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991).

Common questions include (1) whether Defendants failed to compensate Plaintiffs and Class Members for all time worked; (2) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in violation of Defendants' obligation to pay overtime premiums to Plaintiffs and Class Members for all time worked in excess of forty (40) hours per week.

### c.      Typicality -- Rule 23(a)(3)

The issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. To satisfy the typicality requirement of Rule 23(a)(3), the class representative's claims must arise from the same practice or course of conduct and be based on the same legal theory as the claims of class members. *Keele*, 149 F.3d at 595; *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Moreover, "typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). The claims here of Plaintiffs and Class Members arise from the same alleged conduct of Defendants.

Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). That is the case here.

### d.      Adequacy of Representation -- Rule 23(a)(4)

### i.      *Named Plaintiffs will adequately represent interests of the class.*

Rule 23(a)(4) requires the named class representatives "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. G.C. Services, Limited Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)(internal citations omitted). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441, at *16 (N.D. Ill. Sept. 27, 1996).

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the class were all employed by Defendants as employees and all seek unpaid wages for "off the clock" work (including minimum and overtime wages), as well as other earned wages. Plaintiffs do have additional claims or remedies not alleged in the Complaint (retaliation), but such claims do not conflict with the other class claims.

Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. The burden of establishing this element is not difficult. A class representative need only possess general knowledge of the case and participate in discovery. *Sebo v. Rubenstein*, 188 F.R.D. 310,

316 (N.D. Ill. 1999). Plaintiffs here understand the general foundation of the case and each has participated in the Parties' informal discovery, information exchange and settlement negotiations, including a private mediation overseen by Lynn Cohn, Esq. Further, Plaintiffs attended the settlement conference conducted by this Court and assisted in reaching a class-wide resolution of this matter. This qualifies them as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

### ii.    *Plaintiffs' Counsel Should be Appointed Class Counsel*

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all of these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as class actions and/or collective actions under §216(b) of the FLSA.[2]

---

[2] Plaintiffs' Counsel has regularly been designated as class counsel in class action employment litigation including, but not limited to, most recently: *Dean et al. v. Eclipse Advantage Inc., et al* Case 11 C 82 85 (preliminarily approved June 18, 2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12 C 4032 (preliminarily approved May 16, 2013); *Craig v. EmployBridge et al.,* Case No. 11-C-3818 (Closed 04/04/13); *Ramirez et al. v. Paramount Staffing, Inc. et al.,* Case No. 11-C-4163 (Closed 01/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10-C-0644 (Closed 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11-C-2229 (Closed 07/12/12); *Jones et al v. Paramount Insourcing Solutions, Inc.,* Case No. 11-C-3331 (Closed

Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

**B. This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Parties seek certification under Rule 23(b)(3). See *Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc*., 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class

---

05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11-C-2162, (Closed 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10-C-6083 (Closed 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11-C-3818 (Pending, Filed 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08-C-4912 (Closed 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07-C-1289 (Closed 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05-C-2518 (Closed 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.,* Case No. 06-C-4053 (Closed 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06-C-5066 (Closed 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05-C-2682 (Closed 05/17/06).

claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issues are (1) whether Defendants failed to compensate Plaintiffs and Class Members for all time worked; and (2) whether Defendants' alleged failure to compensate Plaintiffs and Class Members for all time worked resulted in a violation of Defendants' obligation to pay overtime wages to Plaintiffs and Class Members for all time worked in excess of forty (40) hours per week.

The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). What matters for purposes of class certification, in addition to the existence of common questions of law and fact, is the capacity of the class-wide proceeding to generate common answers. The questions of law and fact "must be of such a nature that they are capable of class-wide resolution—which means that determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Walmart Store, Inc.,* 131 S. Ct. 2541 (2011) at 2551. In this case, there is a common nucleus of operative fact that concerns the company-wide application of Defendants' compensation policies (Counts I through III). Whether or not a court would determine that those common questions resulted in a violation of the cited statutes,

Defendants' policies applied to all class members equally and a determination as to their truth or falsity will resolve the claims of all class members in one stroke.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *thousands* of individual lawsuits and piecemeal litigation.

## IV.  THE PARTIES' PROPOSED SETTLEMENT

That Parties have engaged in extensive negotiations, including numerous in-person and telephonic meetings between Counsel, and investigation by the Parties and their Counsel. After reviewing thousands of pages of documents, time records and electronic data related to the payment of wages to Plaintiffs and other potential class members, the Parties engaged in a private mediation overseen by Lynn P Cohn, Esq., on April 23, 2013. With Ms. Cohn's assistance, the Parties have reached an agreement to settle Plaintiffs' claims on a class-wide basis for unpaid wages, including unpaid overtime wages and other earned wages resulting from non-payment of travel time and other "off the clock" work, as asserted in Counts I through III; and to resolve Plaintiffs' individual claims of retaliation against Defendants.

### A.  The Settlement Class Definition and Settlement Period

As part of the Settlement, with regard to the class claims asserted in Counts I through VI of the First Amended Complaint, the Parties seek certification of the following class for settlement purposes:

> All individuals who were employed by Defendants between April 10, 2009 and April 10, 2012 in any hourly position, excluding office positions, but who were allegedly not paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks and/or who were allegedly not compensated for all time worked in individual work weeks.

### B.     The Settlement Amount

Under the terms of the Settlement Agreement, Defendant CSR will pay a total Settlement Amount of Three Hundred Thousand and 00/100 Dollars ($300,000.00), to be apportioned as follows:

- Forty Six Thousand One Hundred Dollars of the Settlement Amount will be paid to the Named Plaintiffs as consideration for their General Releases, and for Enhancement Awards for their Service to the Class as provided in Section 13 of the Stipulation of Settlement.

- Ninety Thousand Dollars of the Settlement Amount (30% of the Settlement Amount) will be paid to Plaintiffs' Counsel as compensation for attorneys' fees and costs,  and for any costs associated Class Counsel's administration of the Claims process as provided in Section 14 of the Stipulation of Settlement.

- The remainder of the Settlement Amount, referred to in this Agreement as the "Class Settlement Amount," will be distributed to the Class Members, including Named Plaintiffs, as provided in Section 12 of the Stipulation of Settlement.

Each Class Member will be allocated a proportionate share of the Class Settlement Amount.  Each Class Member's proportionate share of the Class Settlement Distribution shall be calculated as follows:

For settlement purposes only, Plaintiffs' Counsel used the extensive time and payroll records produced by Defendants for each of the Named Plaintiffs to calculate a Maximum Potential Award per Calendar Day of Employment during the Limitations Period ("R") for each Named Plaintiff and for each category of Class Member. This amount represents an estimate of the amount of wages and overtime pay that Plaintiffs contend is owed by Defendants to each Named Plaintiff and Class Member for uncompensated travel and loading / unloading time. R for each Named Plaintiff and category of Class Member is as follows:

- For Class Members identified by Defendants as Installation Crew members, $2.44.

- For Class Members identified by Defendants as Service Crew members, $14.87.
- For class members identified by Defendants as splitting time between Installation and Service Crew duties, $6.17.
- For Class Members identified by Defendants as Service Crew Drivers, $12.63.
- For Arturo Avila: $2.44.
- For Pedro Morales: $14.87.
- For Salvador Quintana: $9.21.[3]
- For Ignacio Blancas: $12.63.
- For Arturo Ortiz: $2.44.

The number of Calendar Days of Employment during the limitations period ("N") for each Class Member and Named Plaintiff was calculated based upon the individual's hire date and termination date provided by Defendants, and is reflected in Exhibit A to the Stipulation of Settlement.

Each Named Plaintiff and Class Member's Maximum Potential Award (M) will therefore be calculated as R*N. If that amount is less than $200, M for the payee will be $200.

If the total of the Maximum Potential Awards (M) for all Named Plaintiffs and all Class Members who satisfy the conditions set forth in Section 12.1 ("T") exceeds the Class Settlement Amount ("C"), the distribution to each Named Plaintiff and Class Member ("D") will be reduced on a *pro rata* basis, according to the following calculation:

(M/T) * C = P

A supplement ("S") to P will be calculated as follows: If $P \geq \$200$, S = 0; if $P < \$200$, S = $200 – P.

Q = the total of P for all payees for whom S = 0.

H = the total of S for all payees.

E = P / Q

---

[3] Salvador Quintata worked in a hybrid position, performing duties in all of CSR's Departments, which results in Mr. Quintana having a different Maximum Potential Award per Calendar Day of Employment During the Limitations Period ("R") from the other job categories which the other Named Plaintiffs and Class Members call into.

A pro-rata reduction to P ("L") for each payee will be calculated as follows: If $S > 0$, $L = 0$. If $S = 0$, $L = E * H$.

The final distribution for each payee ("D") $= P + S - L$.

The formulas described above are embedded into the Microsoft Excel file from which the printed table attached to the Stipulation of Settlement as Exhibit A was generated. In the event of any discrepancy between the description above and the formulas in the Excel file, the latter shall control, *provided however* that if any errors are subsequently discovered in the Excel file that materially affect the rights of any party under this Agreement, the Parties agree to work in good faith to correct the errors and calculate the distributions to all payees according to the Parties' settlement.

Under the above formula, if all Class Members satisfy the conditions of Section 12.1, each Class Member and Named Plaintiff would receive a payment of at least $200, with a maximum payment of $10,131.48.

The minimum payment to each Class Member and Named Plaintiff is included in Exhibit A to the Stipulation of Settlement.

In addition to the above referenced relief, to the extent that there is any remainder amount from the Class Settlement Fund, half of such remainder amount shall be donated by Defendants to an IRS 501(c)(3) tax-exempt non-profit legal service organization, the Working Hands Legal Clinic to help support their ongoing mission to assist low-wage workers throughout the greater Chicago area, and the other half will revert to CSR.

### C.      Release and Bar of Claims

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the Court shall be deemed to have relinquished all claims as set forth in the Settlement Agreement, and to have released Defendants and the other released parties from all liability arising out of those claims.

Upon granting final approval of the Settlement, the Parties will ask the Court to dismiss this matter, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms, for a period not to exceed 180 days absent further order of the Court, after which time the dismissal shall be with prejudice.

### D.      Named Plaintiff Payments

In addition, as part of the Agreement, a total of $46,100.00 of the Settlement Amount will be paid to Named Plaintiffs Ignacio Blancas, Pedro Morales, Salvador Quintana, Arturo Avila and Arturo Ortiz for their claims asserted in the Lawsuit and claims that could have been asserted, including any claims for retaliation or interference with Plaintiffs' ability to contract with future employers. Said payments to Named Plaintiffs will be in addition to Plaintiffs' proportional share of the Class Settlement Fund and will be distributed as follows:

| Plaintiffs | Enhancement | General Release |
|---|---|---|
| Arturo Avila | $2,000.00 | $5,200.00 |
| Pedro Morales | $2,000.00 | $11,500.00 |
| Salvador Quintana | $1,200.00 | $7,500.00 |
| Igancio Blancas | $2,000.00 | $7,500.00 |
| Arturo Ortiz | $2,000.00 | $5,200.00 |

Fifty percent (50%) of each payment made to Named Plaintiffs, with the exception of the enhancement award payment shall be treated as settlement of a wage claim. Appropriate

withholding of federal, state, and local income taxes, and the Named Plaintiff's share of Federal Insurance Contributions Act (FICA) taxes shall be deducted from the respective Settlement Payments, and Defendants shall issue an IRS form W-2 for such payments. Defendants will be responsible for paying from its own funds Federal Unemployment Tax Act and the employer's share of FICA taxes on all applicable amounts paid to Class Members. The remaining 50% of each payment made to each Named Plaintiff shall be treated as settlement of the Named Plaintiff's claim for liquidated and/or penalty damages pursuant to the FLSA and/or the state statutes providing for liquidated and/or penalty damages, as well as for alleged retaliation, and shall be made without withholdings. Defendants shall issue an IRS form 1099 for such payments. Defendants will also issue an IRS form 1099 for Plaintiffs' enhancement awards.

### E.    Attorneys' Fees

Finally, $90,000.00 of the Settlement Amount, equivalent to thirty percent (30%) of the total Settlement Amount, will be paid to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, including but not limited to: (i) obtaining Preliminary Approval from the Court; (ii) working with the Claims Administrator; (iii) administering the settlement claims process and responding to inquiries from Putative Class Members regarding the Settlement; (iv) assisting Putative Class Members; (v) assisting in resolving any objections; (vi) defending the Settlement and securing the Final Order, including the conduct of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount but shall be separate from and in addition to the Class Settlement Fund.

## V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Settlement and Class Action Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class Members, would be impracticable. The proposed Settlement therefore is the best vehicle for Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members'

due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this motion, the Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Although the Parties have requested a hearing with oral argument, neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

### B. The Criteria for Preliminary Settlement Approval Are Satisfied.

1.    **The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id.*

Plaintiffs allege, on behalf of the identified class, that Defendants failed to compensate them for travel time and other "off the clock" work, including loading and unloading time resulting in a failure by Defendants to compensate Plaintiffs and the Class overtime premiums for all time worked in excess of forty hours during individual work weeks. Defendants deny that these practices occurred, or contend that, to the extent that they may have occurred, they were not unlawful or were incidental.

Given the uncertainty of whether the claims could be certified for class treatment and the difficulties of proof, the terms of the Settlement Agreement compromising the class claims are fair and reasonable. The Parties negotiated Settlement amount of three Hundred Thousand and 00/100 Dollars ($300,000.00), which the Parties believe will be adequate to provide Class

members who file valid claims with the substantial recovery proportional to the hours they worked for Defendants. Defendants believe that the amount of the funds exceeds the amount of any damages that Class members have incurred, but has determined that settlement is preferable to litigating this matter. In addition, the Parties have agreed to designate a non-profit legal service organization, the Working Hands Legal Clinic, as the recipient of a donation from Defendants for half of any remainder amounts.[4] Under this Agreement, 50% of the funds resulting from the Parties' inability to locate putative class members who might otherwise be able to make a claim on the Class Settlement Fund will go to a non-profit organization whose primary mission is to serve that very population.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of the Defendants' industry. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In his former capacity as founder and Director of the non-profit Working Hands Legal Clinic, Plaintiffs' Counsel served as an expert

---

[4] Working Hands Legal Clinic ("WHLC") is a non-profit legal services organization whose mission is to assist low income Illinois residents in the area of employment law. WHLC has played a significant role in advising the Illinois Legislature in the passage of the legislation to provide workplace protections for low wage workers, including the recent amendments to the Illinois Wage Payment and Collection Act and the Illinois Day and Temporary Labor Services Act. WHLC is funded by the Chicago Bar Foundation, the Illinois Equal Justice Foundation, the Lawyers' Trust Fund, among others, and has received *cy pres* funds in other class action litigation settlements involving low wage laborers. In the interest of full disclosure, as discussed further *infra*, Plaintiffs' Counsel is a founder and former Director of WHLC but is no longer employed by WHLC and will receive no personal benefit from any *cy pres* funds received by WHLC.

advisor to the legislative sponsors of the 2010 amendments to the Illinois Wage Payment and Collection Act, the 2007 amendments to the Illinois Minimum Wage Law and the 2006 amendments to the Illinois Day and Temporary Labor Services Act. In addition, Plaintiffs' Counsel has successfully litigated and resolved over 30 class actions involving low wage laborers in the logistics and temporary staffing industry. Similarly, Counsel for Defendants are experienced class action litigators with substantial experience in Defendants' industry.

Settlement negotiations in this case took place over the course of many months. After a period of extensive investigation and discovery, frequent meetings between Class Counsel and the Named Plaintiffs, and a private mediation on April 23, 2013, the Parties reached agreement on a settlement framework in this matter on. The Parties' negotiations over the final terms of the Settlement Agreement, resulted in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3. The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class members. All Class Members will receive a substantial cash payment from the Class Settlement Fund proportional to the days that they worked for Defendants and the number of Class Members that file timely claim forms. Furthermore, 50% of any residual amount remaining from the Class Settlement Proceeds will be distributed to a charitable organization, the mission of which is to provide free legal assistance to law income Illinois Residents such as Plaintiffs and the Class in the area of employment law.

### 4. Payments to Named Plaintiffs are Appropriate and Reasonable.

Pursuant to the Agreement, each Named Plaintiff shall receive their proportional share of the Class Settlement Fund for settlement of their claim for owed wages, including overtime wages and wages at the rate agreed to by the parties. Each Named Plaintiff shall also receive a

payment for settlement of their claims for retaliation and for their release as to Defendants from any other claims against Defendants, as reflected in Section IV, paragraph D, *supra*. Additionally, Plaintiffs will receive $2,000.00 enhancement awards ($1,200.00 in the case of Salvador Quintana), for their service to the Class in litigating this matter. All payments to Named Plaintiffs shall be separate and apart from the Class Settlement fund. As a result, the Named Plaintiffs are not receiving preferential treatment in the settlement of their class claims.

### 5. Plaintiffs' Request for 30% of the Settlement Amount for Attorneys' Fees and Costs is Fair and Reasonable

Section 12 of the Settlement Agreement provides that Plaintiffs' Counsel will receive thirty percent (3%) of the Settlement Amount or Ninety Thousand Dollars ($90,000.00) for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) administering the settlement claims process and responding to inquiries from and otherwise assisting Class Members regarding the Settlement; (iii) assisting in the review of claims submitted by Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the Settlement Amount in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472,

478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." Id. at 563 (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"), citing Skelton v. General Motors Corp., 860 F.2d 250, 252 (7th Cir. 1989). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including our own, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." *Bishop v. Burgard*, 198 Ill.2d 495, 509, 764 N.E.2d 24, 33, 261 Ill. Dec. 733 (2002) (emphasis added) (citing *Boeing Co v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745(1980)).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IMWL, and IWPCA by both federal and state court judges. Courts in this district have regularly awarded Class Counsel a percentage of the common fund for attorneys' fees and costs in litigating class action cases.[5]

---

[5] See the following cases from the Northern District of Illinois and the Chancery Court of the Circuit Court of Cook County involving Class Counsel: *Craig v. EmployBridge et al.,* Case No. 11 C 3818,(N.D. ILL.)(D.E. No. 75) Order

Other courts in this district commonly award attorney's fees equal to one-third (33%) or more of the total recovery. *See e.g.*, *Johnson, et al v. CHA, et al.*, 94 C 7692 (N.D.Ill.1998) (Plunkett, J.) (awarding one-third of the fund for attorneys' fees plus costs). Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

In light of the fact that Plaintiffs' Counsel agreed to take this case on a contingency fee basis, agreed to pay all of the costs of the litigation and assumed the risk of there being no recovery, the fee requested here is fair and reasonable, typical of the amount of awards made in the Chicago area and is consistent with the contingency fee arrangement with the Class Representatives.

## **CONCLUSION**

For the foregoing reasons, the Plaintiffs move this Court to: (i) grant this Unopposed Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and

---

dated April 4, 2013, awarding 30% of the $450,000 common fund in an FLSA, IMWL, IWPCA and IDTLSA case for attorneys' fees and costs to plaintiffs' counsel; *Ramirez et al. v. Paramount Staffing, Inc. et al.,* Case No. 11-C-4163 (N.D. ILL.)(D.E. No. 40) Order dated January 29, 2013, awarding 27 1/3% of $600,000 common fund in an IWPCA vacation pay case for attorneys' fees and costs to plaintiffs' counsel; .*Francisco, et al. v. REM Staffing, et al.,* Case No. 11-2162 (N.D. Ill.)(D.E. No. 43, Order dated May 24, 2012, awarding 33 1/3% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Jones et al. v. Simos Insourcing Solutions, Inc. et al.,* Case No. 11-3331 (N.D. Ill.)(D.E. No. 35, Order dated May 4, 2012, awarding 33 1/3% of common find in IWPCA and IDTLSA case); *Ochoa et al. v. Fresh Farms International Market, Inc. et al.,* Case No. 11-2229 (N.D. Ill.)(D.E. No. 29, Order dated July 10, 2012, awarding 18% of common find in overtime case); *Ramirez et al. v. Paramount Staffing, Inc. et al.,* Case No. 11-4163 (N.D. Ill.)(D.E. No. 40, Order dated January 29, 2013 awarding 27 1/3% of common fund in IWPCA and IDTLSA claim); *Alvarez et al. v. Staffing Partners, Inc. et al.,* Case No. 10-6083 (N.D. Ill.)(D.E. No. 63, Order dated January 17, 2012, awarding 27 1/2% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Bautista et al. v. Real Time Staffing Services, Inc. et al.,* Case No. 10-0644 (N.D. Ill.)(D.E. No. 58, Order dated August 28, 2012, awarding 18 3/4% of common fund in FLSA, IMWL, IWPCA and IDTLSA case); *Herrera, et al. v. Chicago Mattress, Inc.,* Case No. 06-1872 (D.E. No. 49, Order awarding 33% of the common fund in overtime case); *Acosta, et al. vs. Scott Labor, et al.,* Case No. 05-2518 (D.E. No. 120, Order awarding 33 1/3% of common fund in overtime case); *Ortegon, et al. v. Staffing Network, Inc.,* Case No. 06 CH 12679 (Order dated July 24, 2009, awarding 33% of common fund in IDTLSA and overtime case).

Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; and (vi) grant

all further relief deemed just and proper.

**For Plaintiffs:**

**For CSR Defendants:**

s/Christopher J. Williams
CHRISTOPHER J. WILLIAMS
ALVAR AYALA
Workers' Law Office, PC
401 S. LaSalle Street, Suite 1400
Chicago, Il 60605
(312) 795-9121

s/William R. Pokorny
WILLIAM R. POKORNY
Franczek Radelet P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Attorney for Plaintiffs

Attorney for Defendants

Dated: August 14, 2013